### ROSARIO v. UNITED STATES.
#### No. 7030.

United States Court of Appeals for the District of Columbia.

Decided June 30, 1939.

Warren E. Miller, of Washington, D. C., for appellant.

David A. Pine, U. S. Dist. Atty., and J. B. Costello, Julius C. Martin, Wilbur C. Pickett, and Keith L. Seegmiller, of the Department of Justice, all of Washington, D. C.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

This is an appeal from a judgment of the district court dismissing a war risk insurance case on the ground that the action was barred by limitations.

It appears that Juan J. Robles was issued a war risk insurance policy while in the military service of the United States. He was discharged from such service on January 4, 1919, and died on December 28, 1919. After his death, his mother, Ana Rosario, the designated beneficiary of the insurance contract, appellant herein, made claim in writing on February 1, 1927, for payment of the insurance benefits. Thereafter, she wrote the Bureau on March 8, 1927, and April 19, 1927, in which she asked for favorable action in respect to payments under the policy, and for further reconsideration of her claim. On May 2, 1929, she directed a letter to the Director in which she requested him to review her claim, and if his decision was adverse, for a letter of disagreement.

Subsequently on November 12, 1929, having received no notice of any action on her request of May 2, 1929, she again wrote the Director asking for re-consideration of her claim and advising him that she had received total disability compensation paid from date of discharge to date of death (which payments were collected subsequently to his death) and referring him to her insurance status in virtue of Sec. 305 of the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 516.

On November 26, 1929, a letter signed "by direction, H. H. Milks, chief, Awards Division" was mailed to appellant. This letter stated that it had been decided that the evidence of record was insufficient to warrant a permanent and total disability rating for the deceased veteran at the time he was discharged from the military service, and that it had been determined that the cause of the veteran's death was not due or incident to his military service. This letter stated also: "Under these decisions, the benefits for insurance and death compensation claimed must be denied by the United States Veterans' Bureau."

On June 29, 1931, the present attorney of appellant wrote the Administrator of Veterans' Affairs. His letter contained a demand for benefits due under the policy, asked for reconsideration of previous action taken, and requested "your decision at an early date either allowing this claim for insurance benefits or else denying the same thereby creating the necessary 'disagreement' contemplated under said Section 19 of the said Act." He was replied to by letter under date of July 16, 1931, from the Director of Insurance, which advised him "that the insurance feature of this case is being accorded consideration relative to which you will be further communicated with. All future communications relative to this case should bear the veteran's name and refer to the number XC–303,409." This was the number given to the original claim of appellant.

On August 17, 1931, appellant, through her attorney, brought an action in the district court under the contract of insurance here sued upon. In that action the government pleaded that this claim had not been denied by the Director of the United States Veterans' Bureau, nor by anyone acting in his name on appeal to him (as required by section 19 of the 1924 statute as amended by Act July 3, 1930, § 4, 38 U.S.C.A. § 445). Acceding to this plea of the government, appellant moved for dismissal of the action without prejudice, and the action was thus dismissed, without prejudice, by the district court on July 13, 1934.

After dismissal of this action filed in 1931, the following occurred: A more formal claim by appellant for insurance benefits, executed upon Form 579, was filed November 22, 1934. Decision of Insurance Claims Council was rendered March 4, 1935. It recited that the claim in this case was originally filed by letter of 1927; that suit was filed in the district court about October 20, 1931, which suit was dismissed July 13, 1934, without prejudice, "evidently be reason of the fact that no disagreement existed"; and that "upon consideration of the entire record, it is the decision of the Council that a permanent and total disability for insurance purposes did not exist in this case on the date alleged or at any time while the insurance was in force."

Because of this decision by the Insurance Claims Council, appellant was written a letter, on March 6, 1935, signed by the Director of Insurance. This letter contained the following language: "You are informed a decision was rendered on March 4, 1935, by the Insurance Claims Council to the effect that the evidence was not sufficient to establish as a fact that the insured was permanently and totally disabled at the time alleged or at any time while insurance was in force, and, therefore, the claim has been denied. An application for review on appeal to the Administrator of Veterans' Affairs may be filed within one year from the date of this letter which is the mailing date thereof. Any material evidence submitted within a period of one year or prior to the consideration of the appeal, whichever is the earlier, will receive consideration but the submission of such evidence will not extend the period in which an appeal may be presented. * * * If no appeal is taken, then the denial of the claim by the Insurance Claims Council is final."

Appellant filed the present action on September 5, 1935. The answer of the Administration avers that the claim of appellant was denied by the Director of the United States Veterans' Bureau (now Administrator of Veterans' Affairs) on August 15, 1929, and that notice of this denial was forwarded to the plaintiff on the 12th

day of November, 1929, further, that the claim sued upon was first filed with the Administration on July 2, 1931, and duly denied on March 4, 1935.[1]

This, we think, sets out the material facts necessary for the consideration of the single question presented for our decision. This question is whether the Act of July 3, 1930, suspended the limitations therein contained sufficiently to permit the filing of the present suit.

As stated in the Commissioner's report to the district court, and conceded by the government in its brief, if the claim was pending from February, 1927, to March 6, 1935, this suit was filed in time. But, the government contends that the original claim was denied on November 26, 1929; that a second claim was filed by appellant's attorney, which is contained in his letter of June 29, 1931; and, that the present action is based upon this second claim, and, therefore, is not timely. We cannot agree with this contention.

■ The attorney's letter was directed to the personal attention of the Director. In it he asked for favorable action upon the insurance claim, which had been made by appellant, and demanded a decision either allowing or denying the claim so that there would be the necessary "disagreement" under the Act, thereby enabling him to maintain an action on the policy. It was characterized by him a "Second Demand". To this he received the reply of July 16, 1931, from which we quote above. We hold that this letter of the attorney cannot be considered a second claim filed by appellant. The context of the letter justifies no other construction than an attempt to gain action by the government to the end that the original claim might be paid, or be definitely refused payment so that its correctness might be litigated. We are strengthened in this view by the manner in which it was treated by the Administration. The language of the answer of the Administration can only be described as a re-opening of further negotiations concerning the original claim of appellant.

The World War Veterans' Act of 1924, 43 Stat. 607, 38 U.S.C.A. § 421 et seq., contained no provision limiting the time within which suits upon policies of war risk insurance must be brought. However, by Act of May 29, 1928, 45 Stat. 964, Congress prescribed a period of limitations for such suits. Section 19 was thereby amended by allowing no suit "unless the same shall have been brought within six years after the right accrued for which the claim is made, or within one year from the date of the approval of this amendatory Act, whichever is the later date." But this act also provided "that this limitation is suspended for the period elapsing between the filing in the bureau of the claim sued upon and the denial of said claim by the *director*." The Act of July 3, 1930 (approved July 3, 1930) c. 849, § 4, 46 Stat. 991, 992 (38 U.S.C.A. § 445) also amended section 19 of the World War Veterans' Act, containing the identical language of the 1928 act, which is quoted above, and further provided: "the term 'disagreement' means a denial of the claim by the *director* or *some one acting in his name* on an *appeal* to the *director*." [Italics supplied.]

■ We do not think that there was a denial of the claim on November 26, 1929, constituting a "disagreement" under the statute. The Act of 1928 required such denial to be made by the Director of the Veterans' Bureau. There is nothing in the record to indicate that the Director informed the appellant that he had denied the claim. Even though the initialing of a departmental memorandum could be said to be a denial, upon which we do not pass, we think that the statute required that there must be a denial by the Director to the claimant before suit could be maintained.[2]

---

[1] The record does not bear out the averments of the answer of the Administration, filed in the present action. The alleged letter of November 12, 1929, from the Administration to appellant is not contained in the record. The alleged denial on August 15, 1929, is an inter-departmental communication from the Advisory Group on Appeals to the Director, which is initialed "approved F. T. H., Director." The averment that the claim sued upon was first filed with the Administration on July 2, 1931, is a contention that the letter of appellant's attorney is a second claim filed on behalf of appellant. We have treated this contention in the body of the opinion.

[2] Cf. Mara v. United States, D.C., 54 F. 2d 397; Maulis v. United States, D.C., 56 F.2d 444; Taylor v. United States, D.C., 57 F.2d 331; United States v. Collins, 4 Cir., 61 F.2d 1002; Fouts v. United States, 5 Cir., 67 F.2d 249; Pelkey v. United States, 63 App.D.C. 211, 71 F.2d 221.

By express language of the 1930 act the denial had to be made by the Director or some one acting in his name on an appeal to the Director. "The Act of 1930 was an amendatory act, and, after its passage, section 19, as amended, was to be read, as to all subsequent occurrences, as if it had always been in the amended form." Baille v. United States, 8 Cir., 70 F.2d 527, 529. In our opinion it is not necessary to develop the history of the legislation leading up to the enactment of this statute, or review the many cases that discuss "disagreement." The intention of Congress was clearly "The establishment of a definite rule that before suit is brought a claimant must make claim for insurance and prosecute his cause on appeal through the appellate agencies of the Bureau before he shall have the right to enter suit."[3] We observe, however, that the Administration recognized that the action on August 15, 1929, and the letter of November 26, 1929, was not such a disagreement as contemplated by statute, as it pleaded and relied upon the fact that there had been no "disagreement" to obtain a dismissal of the suit filed in 1931. The Administration further recognized that a final disagreement did not exist in 1929 by its action in considering the case over a period of years, and finally, in 1935, denying the claim. This notice of denial was sent to appellant personally, advising her of the finality of the denial, and informing her of her right to appeal, within a year, or bring a suit. Thus, it was not until 1935 that the Administration took the action which had been repeatedly requested by appellant and her attorney. This denial constituted a disagreement in 1935, because the procedure had then been changed by statute. Act of January 28, 1935, c. 1, 49 Stat. 1, 38 U.S.C.A. § 445c.

Even if it be conceded that the letter of November 26, 1929, constituted a denial by the Director, we yet would be constrained to hold that this action was filed in time, in view of the negotiations occurring subsequent to that denial. In this connection, it is manifest that there is nothing in the statute or in the procedure before the Administration that prohibits the reopening and reconsideration of a claim that has been denied by the Administration. United States v. Bollman, 8 Cir., 73 F.2d 133.

We think that the lack of finality of action by the Administration in 1929 is quite similar to that presented in United States v. Bollman, supra. There on March 4, 1926, the bureau informed appellee that she had violated section 22 of the act of Oct. 6, 1917, 40 Stat. 400, and that her insurance payments would be stopped. "However, the record shows further communications establishing that there were continued negotiations between claimant and the government with a view to having this action set aside, and that such negotiations were permitted by the bureau, and, in a sense, participated in by it. Those communications clearly show that this effort to reopen the matter was not finally closed by the bureau until December 1;

---

[3] House Report #874, 71st Cong., Committee on World War Veterans' Legislation, accompanying H.R. 10381, provides: "A paragraph is added to define the meaning of the term 'claim' and the term 'disagreement' as used therein. It has for its purpose the establishment of a definite rule that before suit is brought a claimant must make a claim for insurance and prosecute his case on appeal through the appellate agencies of the bureau before he shall have the right to enter suit. Your committee felt that in view of the fact that the Government has set up in the bureau expensive machinery for hearing claims it was unfair for a veteran to disregard this machinery on the basis of the disallowance of his claim by some subordinate board and enter suit."

H.R. 10381 passed both Houses of Congress, but was returned by the President without approval. Immediately after the veto was sustained, H.R. 13174 was considered and passed in the House. Many of its provisions, including the pertinent language involved herein, were identic with those employed in the vetoed measure. No House committee report was submitted in connection with H.R. 13174, which was enacted into law. The pertinent language contained in Sec. 19 of the act, as finally amended, is the same as contained in these two House bills. We, therefore, quote with approval the language of the report accompanying the first bill as indicative of the intent of the House in enacting this legislation.

Report of the Senate Finance Committee accompanying H.R. 13174. Senate Report No. 1128, 2d. Sess. 71st Cong.; Pelkey v. United States; Mara v. United States; Taylor v. United States, all supra, note 2.

1931. We hold that so long as this order was under serious discussion in the bureau and until it finally declined to reopen the matter the order should not be deemed final for application of limitations against suit. * * * So long as the bureau treats or acts in a manner which would lead the claimant reasonably to believe that it is holding the matter open, we think it would be unjust to regard it as closed by the first order. The bureau can at any time definitely terminate such proceedings by stating that it declines to reopen and that its order is final." [73 F.2d 135.]

■ We point out that in the letter of March 6, 1935, which states with finality that the claim is denied and the disagreement called for by the statute reached, the appellant was notified that she might submit new evidence to the Administration within one year, which would be considered, and again reopen the matter there, or that she might accept the finality of administrative action and test that action in court. This is indicative that the Administration recognizes the intent of Congress exemplified in the statute and considers it to be its duty to make a fair administrative ruling with all proper evidence presented. We hold this to be in line with the intent of Congress that the Administration should have the fullest opportunity to make its determination before the veteran, beneficiary under the policy, or the government should be put to the burden of litigation.

■ As we view it, the Administration was endeavoring to effectuate the Congressional purpose when after November 26, 1929, it gave its further consideration to the claim for insurance, and that it made its final determination on March 6, 1935. As the claim was thus suspended from the operation of the statute, the statute was tolled for this entire period, and the suit filed on September 5, 1935, was filed in time.[4]

In this view of the case, jurisdiction is in the district court, and we pass, therefore, without decision, the other question raised.

Reversed and remanded.

---

[4] United States v. Bollman, 8 Cir., 73 F.2d 133; Howard v. United States, 6 Cir., 97 F.2d 987, 989; Danner v. United States, 8 Cir., 100 F.2d 43; Kane v. United States, D.C., 25 F.Supp. 839.