## DYER et al. v. UNITED STATES.
### No. 9032.

United States Court of Appeals
District of Columbia.

Argued Jan. 17, 1946.

Decided March 4, 1946.

CLARK, Associate Justice, dissenting.

Mr. Warren E. Miller, of Washington, D. C., for appellants.

Mr. Joseph H. San, Attorney, Department of Justice, of New York City, with whom Messrs. Edward M. Curran, United States Attorney, of Washington, D. C., Wilbur C. Pickett, Special Assistant to the Attorney General, and Fendall Marbury, Attorney, Department of Justice, of Washington, D. C., were on the brief for appellee.

Mr. Charles B. Murray, Assistant United States Attorney, of Washington, D. C., also entered an appearance for appellee.

Before GRONER, Chief Justice, and EDGERTON and CLARK, Associate Justices.

GRONER, C. J.

This is an action begun by appellants, beneficiaries, to recover on two policies of War Risk Insurance issued to Everett Dyer, a soldier in the first World War. The District Court dismissed the complaint on the ground that suit for recovery was barred by the six year statute of limitations.[1] The record discloses that the policies were issued to insured during his military service, which ended May 21, 1919. The policies lapsed July 3, 1919, for non-payment of premium.

The contention on the merits is that at the time the policies lapsed the insured was suffering from a compensable disability for which he had not received compensation and that there was a sufficient amount due him at the time of death to revive the policies under Section 305 of the World War Veterans' Act[2] and to maintain them until

---

[1] § 19, World War Veterans' Act, 1924, as amended, 38 U.S.C.A. § 445:

"No suit on yearly renewable term insurance shall be allowed under this section unless the same shall have been brought within six years after the right accrued for which the claim is made or within one year after July 3, 1930, whichever is the later date, * * * *; *Provided further*, That this limitation is suspended for the period elapsing between the filing in the Veterans' Administration of the claim sued upon and the denial of said claim by the Administrator of Veterans' Affairs."

[2] § 305, World War Veterans' Act, 1924, as amended, 38 U.S.C.A. § 516:

"Where any person has heretofore allowed his insurance to lapse, or has canceled or reduced all or any part of such insurance, while suffering from a compensable disability for which compensation

his death. For the reasons hereinafter stated we do not need to discuss that aspect of the case.

The mother of the deceased soldier, who was one of the beneficiaries under the policies, through her attorney, wrote the Veterans' Bureau on December 31, 1924, advising of the soldier's death on May 18, 1922, and requested reinstatement "of Life Insurance which he carried at the time of his discharge from the army," and asked that the letter should be considered as a sufficient application to save the claim. The letter also asked the Bureau to mail the necessary blanks upon which to make formal application "if Mrs. Dyer is entitled to have this insurance reinstated." The Bureau answered the letter January 31, 1925, informing counsel of the departmental record in relation to disability allowances to the veteran and his dependents and of the fact that there had then accrued and was payable to his estate some $490, which upon receipt of letters of administration would be paid to his administrator. But in reply to the request for information as to the status of the soldier's insurance and for blanks upon which to make claim for reinstatement, the Bureau said: "You are still further advised that the insurance of the above captioned, (the soldier) lapsed for non-payment of premiums July 3, 1919, and therefore, insurance is not payable." Thereafter no further action was taken by any of appellants until September 26, 1932, when a formal claim for the insurance money was made and again denied. And this in turn was followed by another letter to the Bureau dated January 27, 1939, requesting reconsideration in the light of § 305 of the Veterans' Act; and when this was denied, the pending suit followed.

■ Both parties agree, we think correctly, that the attorney's letter of December 31, 1924, was a claim for insurance. They agree that the decisive question for consideration on this appeal is whether the Bureau's letter of January 31, 1925, constituted a denial of this claim. If it did constitute a denial, admittedly, the statute of limitations applies and the order of the court below must be affirmed. Appellants insist, however, that the sentence in the Bureau's letter which we have quoted was not responsive to the letter request for reinstatement, nor to the application therein for forms and information regarding the status of the claim, and hence was not a denial but left the claim pending and undecided. But we think this position is not tenable. The letter of appellants' counsel stated that counsel had been asked by the soldier's mother "to make application for a reinstatement of Life Insurance which he [the soldier] carried at the time of his discharge from the army," and ended with a request that the Bureau mail "the necessary blanks upon which to make the formal application if Mrs. Dyer is entitled to have this insurance reinstated." The Bureau's reply that the insurance had lapsed for nonpayment of premiums and therefore that no insurance was payable was, we think, an unequivocal answer to the query whether there was existing or reinstatable insurance, and likewise a definite "denial" of any right to make claim thereto. In this respect it was both responsive to the request and a denial of it. And that the position of the Bureau in this regard was so understood by claimants seems to us perfectly clear from the fact that nothing more happened in relation to the claim from that time for a period of seven years. It would be trifling with words, we think, to say that the Bureau's answer to the request for blank forms on which to file a claim,—viz.: that the policy had lapsed on a given date and therefore no insurance existed—was not enough to constitute a denial of the claim and hence to create a disagreement within the meaning of the statute. And in this view of the case, admittedly, the limitation of the statute is a complete bar to the action. See Burns v. United States, 2 Cir., 101 F.2d 83; United States v. Kelley, 8 Cir., 110 F.2d 922; Simmons v. United States, 4 Cir., 110 F.2d 296; Maxwell v. United States, 7 Cir., 141 F.2d 139; Neely v. United States, 4 Cir., 115 F.2d 448; United States v. Wallace, 10 Cir., 123 F.2d 484, all of which sustain the conclusion we have reached.

■■ Appellants urge that the doctrine of "continuing negotiations" applied by

---

was not collected and dies or has died, or becomes or has become permanently and totally disabled and at the time of such death or permanent total disability was or is entitled to compensation remaining uncollected, then and in that event so much of his insurance as said uncollected compensation, * * * would purchase if applied as premiums when due, shall not be considered as lapsed * * *."

this court in Rosario v. United States, 70 App.D.C. 323, 106 F.2d 844, is equally applicable to the present case. We do not think its application is justified where, as here, a period of seven years has elapsed between the filing of the first and second claims, and there is nothing to show that the Bureau, or any of the parties during that interval, considered the claim pending. See Simmons v. United States (on rehearing), 111 F.2d 618. Nor will the subsequent filing of other claims after the statutory period raise the bar to suit. Roskos v. United States, 3 Cir., 130 F.2d 751.

Affirmed.

CLARK, Associate Justice (dissenting).

As stated by the majority, the question we are asked to decide is whether the Bureau letter of January 31, 1925, constituted a denial of the claim. After careful consideration of the entire transaction, including the conduct of the claimants and the Veterans' Administration, I must answer this question in the negative. It seems to me that the claimants in this case were left without assistance in the jungle of administrative process. In these circumstances I believe the value of protecting the individual claimants, though they were uncommonly slow in attempting to discover or assert their rights, outweighs the convenience and certainty which result from a strict application of the statute of limitations.

Taking the Bureau letter of January 31, 1925, in full context we find that this information was given: (1) That the Board of Appeals had adjusted the deceased's disability rating thus increasing the accrued and unpaid compensation—to be paid upon receipt of letters of administration. (2) That the question of dependency compensation was still under consideration. (3) That the insurance on the deceased had lapsed for non-payment of premium on July 3, 1919, and was therefore not payable. It thus tacitly admitted that the allowed increase on the accrued and unpaid compensation was sufficient under the law to have provided for the unpaid premiums on the insurance policy.

Taken in toto, this letter appears to me not responsive to the letter on behalf of the claimant. It was not addressed to the question of "reinstatement" rights as posed by the claimant's letter. It is only by inferences which could be drawn by those familiar with the administrative practices of the Bureau that the "denial" of insurance benefits may be said to have been made after consideration of the case under the provisions of Section 305. The effect of the Bureau's letter was, I believe, to by-pass the "reinstatement" element and consequently leave the claim intact, as made.

The Bureau letter makes no mention of appellate procedure to be followed in case the claimant is dissatisfied with any ruling reported therein. Later communications, particularly the one of April 26, 1939, make it clear that the Administration had a fixed form for "denials" which apprised the claimant of his rights in the premises. No such information was given in the 1925 letter.

In such cases it seems little enough to ask that the Administration take some pains to tell the claimant the full story on the salient features of his case, including any further remedy if available. This is particularly important where a case has many facets, each subject to elaborate internal procedure and associated with controversial questions of law and fact. The agency has a peculiar advantage over the uninformed claimant and by reason of that advantage should be held to a high standard in promulgating its rulings before being entitled to the "repose" afforded by a statute of limitations. I do not believe that Congress ever intended that the benefits for veterans under a highly remedial statute should be abrogated by the whim or laziness of bureaucratic officials through administrative "red tape".

While the case of Rosario v. United States, 70 App.D.C. 323, 106 F.2d 844, 846, can be distinguished on the facts, the real issue involved was, I think, the same as that in the present case. There the letter relied on by the government said, "Under these decisions, the benefits for insurance and death compensation claimed must be denied by the United States Veterans' Bureau." After the issuance of this letter, the Bureau, as in this case, continued to consider the claim in response to subsequent correspondence and some five years after the first letter issued a positive "denial".

Most appealing to me is this passage from the opinion by this court in the Rosario case: "Even if it be conceded that the

letter of November 26, 1929, constituted a denial by the Director, we yet would be constrained to hold that this action was filed in time, *in view of the negotiations occurring subsequent to that denial.* In this connection, it is manifest that there is nothing in the statute or in the procedure before the Administration that prohibits the reopening and reconsideration of a claim that has been denied by the Administration." Citing United States v. Bollman, 8 Cir., 73 F.2d 133. (Italics added.)

The majority distinguishes the present case on the ground that here the period of time elapsing between the filing of the first and second claims is substantially longer. In other words, the answer to the question of whether the letter of 1925 was a denial is made to depend in considerable measure upon the conduct of the claimants after they received it. If this be the correct method of ascertaining when the bar of limitations falls I think it proper to look not only to the conduct of the claimants, but also to the conduct of the Administration when they are again approached and asked to reconsider the case. On this point I consider appropriate the following language from United States v. Bollman, 73 F. 2d 133, 135:

"* * * So long as the bureau treats or acts in a manner which would lead the claimant reasonably to believe that it is holding the matter open, we think it would be unjust to regard it as closed by the first order. *The bureau can at any time definitely terminate such proceedings by stating that it declines to reopen and that its order is final.*" (Italics added.)

It does not seem to me an unreasonable standard of public service which would require the very highest degree of exactness on the part of the Veterans' Administration in informing claimants of their rights under the remedial legislation administered by the agency.

While recognizing the need for protecting public agencies from fraudulent or unfounded or long unasserted claims, I cannot agree that in the interest of orderly administration the penalty of limitations should be rigidly applied to those who may unwittingly be caused to neglect their rights due to the paucity or ambiguous character of the information supplied by the governmental body with which they must deal.